FÁBREGAS, DEMANDANTE Y APELADO, *v.* THE PORTO RICAN AND AMERICAN INSURANCE COMPANY, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre póliza de seguro.

No. 2667.—Resuelto en abril 2, 1923.

SEGURO CONTRA ACCIDENTES—COLISIÓN—PRUEBA INADMISIBLE.—Habiéndose probado que nunca formó parte del contrato de seguro contra accidentes, el documento cuya admisión para probar que el contrato no comprendía riesgo de colisión fué negada al demandado, la negativa de la corte debe sostenerse, tanto más cuanto que tal documento no forma parte de los autos en apelación. *Vilar* v. *El Ancora,* 29 D. P. R. 914.

ID.—ID.—Si un automóvil en movimiento se sale de su base en la carretera y cae

en un precipicio chocando violentamente con la tierra, hay una colisión den-
tro del significado de esa palabra cuando se emplea incondicionalmente en
un contrato de seguro.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Chas. Hartzell* y *F. Ra-
mírez Arellano.*

Abogado del apelado: *Sr. P. Fajardo Martínez.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

Esta fué una acción sobre cobro de una póliza de seguro.
La demanda se presentó basada en la teoría de una colisión
que ocasiona daños y perjuicios al automóvil del demandante
como están cubiertos por la póliza, y la Corte de Distrito de
Mayagüez dictó sentencia a favor del demandante. Sostiene
la demandada en apelación que la corte cometió error al ne-
garse a admitir prueba tendente a establecer las condiciones
del contrato y también al declarar probado que hubo en
realidad una colisión según ha de entenderse esa palabra.

La corte en su opinión declaró probado que la evidencia
era contradictoria; que la demandada no había probado sus
defensas y fué de opinión de que la ley y los hechos estaban
a favor del demandante. La corte aparentemente aceptó
los hechos de la demanda que cita en su opinión, o sea, que
en 10 de enero de 1921, siendo como las 10:30 p. m., mien-
tras marchaba el automóvil asegurado por la carretera de
Mayagüez a Maricao a la velocidad de unas doce millas por
hora, las luces del automóvil repentinamente se apagaron
impidiendo ver la carretera al *chauffeur* del demandante y
por consiguiente que se fué contra uno de los árboles que
quedan al costado de la carretera y rompiendo una alambrada
cayó en un pequeño precipicio, quedando totalmente des-
truído dicho automóvil.

También hay prueba tendente a mostrar que en realidad
de verdad el automóvil chocó con uno o más árboles y al-
gunos alambres y entonces cayó seguido en el precipicio.

La opinión de la corte deja algo en duda el hecho de si

dicha corte no creyó que hubo una colisión contra el árbol y el alambre que originó el daño. Pero la prueba tiende más bien a mostrar que el accidente ocurrió al abandonar el automóvil la carretera o base de la misma y que el choque con los árboles y alambres fué más bien un incidente en la caída del automóvil.

Habiendo negado la demandada que el accidente se originó por ninguna colisión o choque con ningún objeto fijo o en movimiento, la corte declaró probado que la prueba era contradictoria y que la demandada no había probado ninguna de las defensas establecidas en su contestación, y que la póliza fué expedida para responder de cualquier daño y perjuicio con motivo de accidente o colisión hasta la suma del seguro y por tanto que debía dictarse sentencia a favor del demandante.

El primer señalamiento de error alegado por la apelante fué que la corte erró al no haber aceptado como prueba un impreso o certificado de colisión de seguro que formaba parte de la póliza. Esta no aseguraba exactamente contra colisión, pero en la solicitud o "declaraciones" se hacía constar que una parte de la prima era por colisión. El asegurado pagó $63 por el premio total de los cuales $38 eran por muertes y lesiones, $10 por daños a la propiedad y $15 por colisión; estando todos estos términos de tal modo escritos en inglés en la póliza o en algún sitio de la misma. En las declaraciones constan estas palabras: "Colisión $———— Dec. full cov.," y el premio por esta descripción era $15 y debajo de todas las descripciones de los diferentes riesgos había estas palabras: "Riesgo de colisión a base de $895."

Indiscutiblemente que la compañía aseguradora aceptó el premio de $15 para responder de un accidente causado por *collisión* o "colisión." La adición o endoso que la demandada ofreció como prueba no fué admitido por no estar firmado y porque sobre él nunca se llamó la atención del asegurado. Este endoso por tanto no formaba parte del con-

trato y la corte no cometió error al negarse a admitirlo como prueba. Asimismo, como indica el apelado, el documento cuya admisión fué denegada no forma parte de los autos en apelación. Lo hemos buscado, pues no aparecía en la página a que refirió la apelante. No lo encontramos. Esta es otra razón para sostener la actuación de la corte. *Villar* v. *El Ancora,* 29 D. P. R. 914. De manera que todo lo que tenemos en el caso es la aceptación incondicional de una prima para cubrir el riesgo de colisión.

La apelante también sostiene que no hubo ninguna colisión. Consideramos, sin embargo, después de analizar las autoridades, que si un automóvil en movimiento se sale de su base en la carretera y cae en un precipicio chocando violentamente con la tierra, hay una colisión dentro del significado de esa palabra cuando se emplea incondicionalmente en un contrato de seguro. *Harris* v. *American Casualty Co.*, 44 L. R. A., N. S. 70, fué un caso en el cual la póliza de seguro disponía que los daños causados al automóvil como consecuencia de colisiones que se debían en todo o en parte a vuelcos, debían quedar excluídas de la póliza y la corte resolvió que tal cláusula no tendría el efecto de hacer ineficaz el poder recobrar cuando un automóvil se fué sobre un puente en la carretera precipitándose al agua que había debajo y llegó al fondo de la quebrada donde estaba volcado, por no deberse la colisión al vuelco; siendo el vuelco más bien el resultado de la colisión. La corte de New Jersey consideró primero si el agua de la quebrada y la tierra debajo eran objetos dentro del significado de la póliza y resolvió que el agua y la tierra eran objetos físicos, interpretación que aceptamos en el caso de *El Pueblo* v. *Lebrón,* 26 D. P. R. 427. Que la tierra es un objeto en este sentido ha sido casi universalmente resuelto. Son autoridades los dos anteriores casos y otros que se citan en una nota del tomo 14 A. L. R., pág. 190, incluyendo el caso de *Bell* v. *American Insurance Co.,* reportado en la página 179 del mismo tomo.

En el caso de Harris la corte pasó a considerar la signi-
ficación de la palabra *colisión,* que era el acto de chocar al
encontrarse dos objetos; un contacto violento, según el
*Standard Dictionary;* que para una colisión ambos cuerpos
no tendrían que estar en movimiento, y la corte pasó a su-
ponerse el caso de un automóvil que va por un sitio donde un
puente de la carretera debido a una hendidura se había des-
prendido precipitándose el automóvil abajo en la tierra, y
preguntaba dicha corte si podía decirse que no había lugar
a recobrar por haberse causado el daño al automóvil por la
simple colisión con la tierra en vez de con algún objeto ver-
tical o perpendicular.

En el caso de *Moblad* v. *Western Indemnity Co. of
Dallas, Texas,* 200 Pac. (Cal. App.) 750, donde el borde de la
base de la carretera se había hundido haciendo que se volcara
el automóvil y rodara por el costado del monte, la corte re-
solvió que el daño sufrido por el automóvil por el contacto
con la tierra no se debió únicamente a la colisión con otro
objeto, dentro de la póliza del automóvil, citando el caso de
Bell, *post.* Por supuesto que cuando un automóvil se vuelca
y choca entonces, el accidente no se debe "únicamente" a la
colisión. En ese caso las palabras de la póliza son suscepti-
bles de la interpretación que les ha dado la corte. De igual
modo el caso de *Stuht* v. *U. S. Fidelity & Guaranty Co.* 154
Pac. (Wash.) 137, fué resuelto por virtud de una cláusula se-
mejante.

*Bell* v. *American Insurance Company,* 181 N. W. 734, era
un caso vigoroso que tendía a lo contrario. En ese caso la
póliza aseguraba contra daño por accidente o colisión du-
rante el período asegurado, con cualquier otro automóvil,
vehículo u objeto. Los hechos fueron que el automóvil se
hundía gradualmente en la tierra y el carro se volcó cho-
cando con el suelo y sufriendo daños. Como hemos indi-
cado, la corte resolvió que la tierra era un objeto y que el
caso no exigía la aplicación del principio de *noscitur a sociis,*

pero la corte pensó que no hubo ninguna colisión sino un "vuelco" o "volteo." Dijo la corte:

"Con las definiciones de los lexicógrofos por base, es fácil demostrar que el incidente que trajo por consecuencia un daño al automóvil del demandante constituyó una colisión. Así pues:

"Una colisión es el "encuentro y mutuo choque o golpe de dos o más cuerpos en movimiento, o de un cuerpo en movimiento con uno que está fijo." Diccionario de Century. "Objeto" se define que es "lo que se pone, o puede considerarse como puesto, al paso de alguno de los sentidos, algo que es visible o tangible." Diccionario de Webster. Un automóvil es un objeto. Al volcarse un automóvil su contacto violento con la tierra constituye un "mutuo choque o golpe de un cuerpo en movimiento con uno que está fijo." De ahí que el contacto violento del automóvil con la tierra al ocurrir el vuelco constituyó una colisión."

"Por su faz esta parece ser buena lógica, pero la conclusión no es convincente ni satisfactoria. Uno instintivamente rehusa a estar conforme con el resultado. La razón es que la misma establece un uso nuevo e inusitado y aplicación de la palabra 'colisión.' No decimos que los cuerpos que caen chocan con la tierra. En el lenguaje común la manzana cae al suelo; no choca con la tierra. Lo mismo pasa con todos los cuerpos que descienden. Hablamos del descenso como caída, no como colisión. Según la aceptación popular una colisión no resulta, creemos, de la fuerza de gravedad solamente. Semejante aplicación de la palabra no está sostenida por el 'uso general y frecuente.' "

La corte también dijo lo siguiente:

"Que si bien era cierto que los contratos de seguro deben ser interpretados del modo más estricto en contra del asegurador (citando casos), sin embargo, ellos están sujetos a las mismas reglas de interpretación que se aplican al lenguaje de cualquier otro contrato. * * * El accidente que causa el daño al automóvil de que aquí se trata se conoce en el lenguaje vulgar por un vuelco o volteo. Si fué el objeto asegurar contra un daño que ocurre por tal accidente, ¿por qué no se emplearon tales palabras, u otras de semejante significación? No podemos presumir que las partes en el contrato tuvieron la intención de que un vuelco se interpretara como una colisión a falta de una relación más íntima de los dos incidentes en el sentido popular."

Al mismo tiempo de esta decisión la Corte Suprema de Michigan en el caso de *Universal Service Company et al.* v. *American Insurance Co.*, 181 N. W. 1007, resolvió que el cho-que de un auto-*truck* por caer sobre él desde arriba del cubo una pala de vapor con la cual se estaba cargando el *truck* era una colisión dentro de una póliza que aseguraba al *truck*. La corte, después de considerar alguna jurisprudencia anterior y de hacer un examen de varias definiciones de los diccionarios, citadas en la opinión, se expresó como sigue:

"La mayor parte de las colisiones tienen lugar por el choque violento de dos cuerpos en el mismo plano o nivel, y es indudable-mente cierto que la palabra se emplea más frecuentemente para ex-presar tales choques que no otros choques violentos. Pero dudamos que este hecho haya dado a la palabra tal aceptación corriente de su significación que excluya los choques violentos a menos que ten-gan lugar en el mismo plano o nivel. Si una máquina subía y otra bajaba por una cuesta empinada, y chocasen violentamente, nadie vacilaría un momento en usar la palabra 'colisión.' ¿En qué án-gulo ha de tener lugar el choque para que el uso de la palabra 'coli-sión' sea inadecuado y exima de responsabilidad a la compañía ase-guradora? Estamos persuadidos de que la mejor regla, la segura, es tratar y considerar a la palabra como que tiene la significación que uniformemente le dan los lexicógrafos; que cuando hay un cho-que, un golpe violento o encuentro de dos cuerpos, tiene lugar entre ellos una colisión y que el ángulo de donde procede el choque no tiene importancia. En el presente caso hubo el choque violento del *truck* y el muy pesado cubo cargado; esta fué una colisión dentro del significado de la póliza y hacía responsable a la demandada.

"Mientras llegábamos a la conclusión que hemos alcanzado, y desde la preparación de la anterior opinión, la Corte Suprema de Wisconsin había emitido una opinión en el caso de *Bell* v. *American Insurance Co.*, 181 N. W. 733, en la cual esa corte ha llegado a una conclusión contraria a la nuestra. No obstante la alta consideración que tenemos por las opiniones de esa corte, nos vemos obligados a ser consecuentes con nuestra conclusión original."

Estamos dispuestos a convenir con la Corte Suprema de Michigan. Generalmente no debiéramos decir que una man-zana que desciende u otro objeto liviano chocaba con la tie-

rra como se insiste por la Corte Suprema de Wisconsin. Esto es así porque pensamos en un choque violento o vigoroso de donde puede resultar un daño. Si uno dijera que un aeroplano o aerolito que desciende chocaba con la tierra, aunque tal vez no es el lenguaje más común, no sería un uso tal de la palabra que no fuera permisible. Creemos que hay muchos casos en los cuales la gravedad es la única fuerza donde el choque más o menos fuerte de dos cuerpos se llamaría una colisión. Ciertamente que si un guardafrenos permitía negligentemente que un carro que va a entrar a un desvío chocase con una cabaña, habría una clara colisión suponiendo que la gravedad era la única fuerza, dentro de la distinción establecida en el caso de Bell. Que la gravedad no interviene sola para producir un accidente es fácil deducción de la ley sobre la inercia de Newton, o sea, que un cuerpo permanece en un estado de movimiento. o de quietud hasta que otra fuerza actúa sobre él.

Como indica la Corte de Michigan no han de ser descartados los diccionarios. Cuando decimos que las palabras generalmente deben ser empleadas en un sentido popular, no queremos decir que deben ser usadas de tal modo como todo el mundo en la comunidad las emplearía, pues el uso de las palabras depende en cierto modo de la educación del que habla o escribe y la enseñanza general de la escuela sobre el significado de una palabra es el uso que se le da por los mejores escritores y oradores. Estamos conformes con la Corte Suprema de Wisconsin en que las palabras no han de ser tergiversadas en su uso corriente, en cuanto a un asegurador que redacta un contrato. Sin embargo, cuando se usa una palabra en un contrato en el que se describen genéricamente todos los choques violentos, como ocurre con la palabra colisión en sus definiciones por los diccionarios, debe asumirse que las partes tuvieron en cuenta todo aquello que razonablemente estaría comprendido en la definición de esa palabra, a falta de algo en sentido contrario. El

conflicto mismo en cuanto a la significación de la palabra
en la mente de diferentes cortes debe favorecer al asegu-
rado.

Con excepción del caso de Bell es dudoso si hay alguna
otra corte que defina la palabra *colisión* como sostiene la
apelante.   En los casos de Stuht y Moblad los términos de
la póliza excluían de indemnización los accidentes en parti-
cular.

La lectura de los varios casos nos convence de que la pa-
labra *colisión* se emplea por los aseguradores de automó-
viles para describir cualquier choque o golpe violento.   En
el caso de Stuht, por ejemplo, la póliza aseguraba al auto-
móvil contra daños causados por colisión con otro objeto ya
en movimiento o fijo (excluyendo, sin embargo,   *   *   *) y
entre las cosas excluídas estaban los "vuelcos."   El *vuelco*
se considera, pues, como una excepción de la aceptada sig-
nificación de la palabra "colisión."

*Stix* v. *Travelers Indemnity Co.,* 157 S. W. 870, también
fué un caso en que la póliza aseguraba contra daños "cau-
sados únicamente por colisión con otro objeto (excluyendo,
sin embargo,   *   *   *   toda pérdida o daño por chocar con
cualquier parte de la base de la carretera).   Esto tiende a
demostrar que un choque violento con la base de la carre-
tera ordinariamente se consideraría una colisión.   Se re-
solvió que el sistema de cunetas, etc., no era parte de la base
de la carretera.

En el caso de *Wetherill* v. *Williamsburgh City F. Ins.
Co.,* 60 Pa. Super. Ct. 37, extractado en Ann. Cases 1917
D. 58, la corte dijo:

"Se ha definido la colisión como un choque violento, un mutuo
golpe.   En el párrafo segundo de esta adición se dice que la com-
pañía no es responsable por daños causados por chocar con cualquier
parte de la cuneta.   En ninguna parte de la póliza se hace refe-
rencia sobre ser responsable la compañía por chocar con cualquier
cosa o no ser que 'colisión' y 'choque' se emplearan como palabras

sinónimas. 'Choque' es la propia definición que da la demandada a la palabra 'colisión.' ''

En el caso de *Gibson* v. *Georgia Life Ins. Co.*, 86 S. E. 335, se resolvió que la piedra o hilera de piedras en el reborde de la acera era tal parte de la base de la carretera que excluía a una persona cuyo automóvil había sufrido daños con ella por colisión. Este es otro caso en el cual el asegurador excluyó de las ''colisiones'' el chocar con la base de la carretera. Y el caso anterior, *Harvey* v. *Georgia Life Ins. Co.*, 81 S. E. 206, de la propia corte de Georgia, se pronuncia en el mismo sentido. Allí el automóvil había dejado el camino yéndose a una cuneta y chocando con el terraplén al otro lado, habiendo recobrado el demandante. Véase también el caso de *Southern Casualty Co.* v. *Johnson*, 207 Pac. 987.

Tenemos, pues, un gran número de compañías de seguro que interpretan la palabra ''colisión'' en el sentido de que podría recobrar el apelado. Como interpretación práctica este uso no sería tal vez obligatorio para la apelante, pero cuando las definiciones de los diccionarios y el uso en las pólizas descritas convienen, estamos justificados en llegar a la conclusión de que la palabra ''colisión'' en pólizas de seguro, usada incondicionalmente incluye el deslizarse por un precipicio y el chocar con la tierra que está abajo.

Que esta especie de riesgo se conoce como seguro por colisión puede fácilmente inferirse del texto de *Huddy* sobre automóviles. Después de dedicar secciones relativas al Seguro contra Incendio y otras semejantes, trata el autor del Seguro por Colisión, secciones 815 a la 822. En la sección 817 habla del ''Seguro por Colisión,—escepción por daños causados al chocar con una parte del camino.'' En la sección 818 de ''Seguro por Colisión,—excepción del caso de vuelco de la máquina.'' Todas estas autoridades demuestran que las excepciones meramente señalan la regla en cuanto

al significado de la palabra "colisión," cuando se usa in-condicionalmente.

Para una interpretación práctica tenemos la posición asu-mida por las partes mismas. En la carta de los agentes al asegurado negando la validez expresan ellos que no hubo ningún "choque" (*striking*) que causara el vuelco, tratando así de mostrar un seguro contra "choques."

La apelante señala asimismo como error en su alegato que la corte declaró probado que había habido un "choque."

Pero también creemos que la reclamación del demandante está admitida por las alegaciones. El párrafo tercero de la demanda alegaba que el demandante estaba asegurado por la suma de $895 por cualquier daño que pudiera sufrir el automóvil por accidente o colisión. "Accidente" y "coli-sión" se usan a la vez y las palabras son necesariamente lo suficientemente amplias para cubrir este riesgo. La de-mandada contestó que admitía los hechos del párrafo tercero de la demanda pero que los daños y perjuicios de que res-pondía la póliza eran aquellos resultantes de accidentes (*sic*) que ocurran de acuerdo con los riesgos contenidos en la pó-liza. Al redactar la demandada esta contestación probable-mente estaba pensando en la adición o endoso que nunca llegó a ser parte de la póliza. Hay una admisión de res-ponsabilidad en la contestación una vez demostrado que la póliza no contenía ninguna limitación de la clase que ha sido alegada.

Véase, para razonamientos muy semejantes sobre los as-pectos generales, el caso de *Young* v. *New Jersey Ins. Co.,* 284 Fed. 492, encontrado después de publicada la opinión y sentencia.

Debe confirmarse la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Aso-ciados Aldrey, Hutchison y Franco Soto.